UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Banjo McLachlan,<br><br>Plaintiff,<br><br>v.<br><br>Paradium.AI, Inc. f/k/a The Arena Group Holdings, Inc. and The Arena Media Brands, LLC,<br><br>Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Banjo McLachlan ("*Plaintiff*"), by and through his undersigned counsel, for his Complaint against defendants Paradium.AI, Inc. f/k/a The Arena Group Holdings, Inc. ("Arena Group") and The Arena Media Brands, LLC ("Arena Media") (collectively, "Defendants") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq.*

2. Banjo McLachlan ("*McLachlan*") created a series of photographs of American actor Nicolas Cage on location in Western Australia during the filming of the motion picture *The Surfer* (the "Photographs") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. Arena Media owns, and Arena Group controls, operates, and monetizes, the SURFER brand website at www.surfer.com (the "Website").

4. Defendants, without permission or authorization from Plaintiff, actively copied and/or displayed the Photographs on the Website and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

5. Plaintiff is an individual and a professional photographer and photojournalist.



SLG SANDERS · LAW GROUP ·

6. Defendant Arena Group is a Delaware corporation with a principal place of business at 200 Vesey Street, 24th Floor, New York, New York 10281, and its common stock trades on the NYSE American exchange under the symbol PAAI. Arena Group was known as The Arena Group Holdings, Inc. at the time of the Infringements and changed its legal name to Paradium.AI, Inc. in 2026.

7. Defendant Arena Media is a Delaware limited liability company and a wholly owned subsidiary of Arena Group with a principal place of business at 200 Vesey Street, 24th Floor, New York, New York 10281.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

9. This Court has personal jurisdiction over Defendants because each maintains its principal place of business in New York.

10. Venue is proper under 28 U.S.C. §1400(a) because Defendants reside and may be found in this Judicial District, and under 28 U.S.C. §1391(b) because Defendants reside in this Judicial District and a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

11. Banjo McLachlan ("*McLachlan*") is a professional photographer by trade who is the legal and rightful owner of certain photographs and videos which Plaintiff commercially licenses.

12. McLachlan was born and raised in Newport, on the Northern Beaches of Sydney, Australia, was introduced to photography at a young age by his father, and left school at sixteen to train as a photographer.

13. McLachlan began his career as a photographer in New York City and has since

built a body of work spanning celebrity, documentary, and news photography.

14. McLachlan's photography book, *31 Beach Looks*, was published by Perimeter Editions and launched alongside a solo exhibition of the same name in Sydney.

15. In 2026, McLachlan was named a finalist for the Kennedy Awards for Outstanding News Photography for his coverage of the Bondi Beach attack.

16. Plaintiff has invested significant time and money in building Plaintiff's photograph portfolio.

17. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs and videos while many others are the subject of pending copyright applications.

18. Plaintiff's photographs and videos are original, creative works in which Plaintiff owns protectable copyright interests.

19. On November 11, 2023, McLachlan first published Photograph #1. A copy of Photograph #1 is attached hereto as Exhibit 1.

20. On December 31, 2023, Photograph #1 was registered by the USCO under Registration No. VA 2-381-954.

21. On November 11, 2023, McLachlan first published Photograph #2. A copy of Photograph #2 is attached hereto as Exhibit 1.

22. On December 31, 2023, Photograph #2 was registered by the USCO under Registration No. VA 2-381-954.

23. On November 11, 2023, McLachlan first published Photograph #3. A copy of Photograph #3 is attached hereto as Exhibit 1.

24. On December 31, 2023, Photograph #3 was registered by the USCO under Registration No. VA 2-381-954.

25. Each of the Photographs was registered by the USCO within three months after its first publication. Pursuant to 17 U.S.C. §412(2), Plaintiff is therefore entitled to seek statutory damages and attorney's fees for the infringements alleged herein, notwithstanding that the



SLG SANDERS · LAW GROUP ·

infringements commenced after first publication and before the effective dates of registration.

26. In creating the Photographs, McLachlan personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

27. Plaintiff created the Photographs with the intention of them being used commercially and for the purpose of display and/or public distribution.

**B. <u>Defendants' Infringing Activity</u>**

28. Upon information and belief, Arena Media is the owner of the Website and of the SURFER trademarks under which the Website is published and is responsible for its content.

29. Arena Group operates the Website within its Adventure Sports Network division of digital media brands and is responsible for its content.

30. Arena Group is a publicly traded digital media company that describes itself as a brand, data and IP company, and it reports the revenue generated by the Website and its other brands on a consolidated basis in its filings with the United States Securities and Exchange Commission.

31. In 2022, Arena Group acquired the rights to operate and monetize the SURFER digital brand, together with other titles such as Men’s Journal, Powder, and Snowboarder, and it has since operated SURFER as part of its Adventure Sports Network.

32. Arena Group does not merely own Arena Media; it directs the editorial operation of the Website. Among other things, Arena Group recruits and hires the Website’s editor-in-chief, announces the Website’s editorial appointments and initiatives in its own name, and supervises the SURFER brand through the general manager of its Adventure Sports Network.

33. The Website identifies itself to readers as owned by The Arena Group, and upon information and belief, the Website is governed by Arena Group’s terms of use and privacy policy, and notices of claimed copyright infringement concerning the Website are directed to an agent designated by Arena Group.

34. Upon information and belief, content on the Website, including the Infringements,



SLG SANDERS LAW GROUP

is published through the technology platform that Arena Group owns, develops, and operates for its portfolio of brands, and through that platform Arena Group has the practical ability to review, edit, remove, and block any content appearing on the Website.

35. The Website is a key component of Defendants' popular and lucrative commercial enterprise.

36. The Website is free to read and is monetized principally through digital advertising displayed to visitors alongside its articles, as well as through sales of SURFER print editions and merchandise, and Defendants profit from these activities.

37. Because the Website is supported by advertising, Defendants' revenue rises and falls with the volume of traffic to the Website. Arena Group has acknowledged as much in its public filings, attributing declines in its revenue to lower traffic volumes and reduced monetization of its digital advertising.

38. Accordingly, every visitor drawn to the Website by an article generates advertising revenue for Defendants, and Defendants have a direct financial interest in articles that, like the Infringements, attract traffic with exclusive-seeming visual content of celebrities.

39. Upon information and belief, Defendants have not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendants' reach, capabilities, and level of sophistication.

40. Upon information and belief, Defendants' internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

41. Defendants' failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

42. On or about November 15, 2023, without permission or authorization from Plaintiff, Defendants volitionally displayed Photographs #1-3 on the Website as part of an article titled "Leaked Footage: Nicolas Cage Fights Surf Gang While Filming New Movie" at URL:



SLG SANDERS LAW GROUP

https://www.surfer.com/trending-news/leaked-footage-nicolas-cage-fights-surf-gang-while-filming-new-movie (the "Infringements"). Screengrabs depicting the Infringements are attached hereto as Exhibit 2.

43. Defendants displayed the Photographs by embedding them in the article, so that they appeared to the Website's visitors as an integrated part of Defendants' own editorial content, framed by Defendants' text and surrounded by Defendants' advertising.

44. Defendants embedded the Photographs from a post on an Instagram account that is not affiliated with Plaintiff, whose operator is unknown to Plaintiff, and to which Plaintiff never granted permission to post the Photographs.

45. The article was published under the SURFER editorial banner and, upon information and belief, bylined to Dashel Pierson, who wrote for the Website at Defendants' direction (the "Author").

46. The article speaks in the Website's institutional voice. It tells readers that the Website "got the first images" of Cage filming *The Surfer*, and that "[n]ow, we've got footage of [Cage] filming the movie."

47. Upon information and belief, the Website represents to its readers that its articles are produced by its own editorial team.

48. The article's own headline announced that the Photographs were "Leaked Footage." Defendants therefore knew, at the moment they published the Infringements, that the Photographs had not been released by their owner for publication on the Website and that Defendants had no license to display them.

49. The Infringements are exact copies of Plaintiff's original Photographs that were displayed by Defendants.

50. Plaintiff first observed the Infringements on November 27, 2023.

51. Upon information and belief, the Photographs were displayed by Defendants without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photographs.



SLG SANDERS LAW GROUP

52. The Infringements include a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

53. Upon information and belief, Defendants take an active and pervasive role in the content posted on the Website, including, but not limited to copying, posting, selecting, commenting on and displaying images including but not limited to Plaintiff's Photographs.

54. Upon information and belief, at all material times the Author was acting as an employee or agent of Defendants, within the course and scope of that employment or agency, when the Author selected the Photographs and placed them in the article.

55. To the extent Defendants contend that the Author, or any other person who selected or placed the Photographs on the Website, was an independent contractor, that person created the Infringements on assignment for the Website, under Defendants' editorial supervision, and subject to Defendants' standards, editing, approval, and publication decisions.

56. The Infringements were not stored on Defendants' systems or network at the direction of a "user" within the meaning of 17 U.S.C. §512. The article was assigned, edited, approved, and published by Defendants as their own editorial content, and Defendants, not any third party, selected the Photographs and caused them to be displayed on the Website.

57. Defendants' editorial personnel had actual knowledge of the Infringements from the moment of publication, and Defendants did not act expeditiously to remove or disable access to the Infringements upon obtaining that knowledge.

58. Upon information and belief, the Photographs were willfully and volitionally posted to the Website by Defendants.

59. Upon information and belief, Defendants were aware of facts or circumstances from which the determination regarding the Infringements were apparent. Defendants cannot claim that they were not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness to the

Infringements on the part of Defendants.

60. Upon information and belief, Defendants engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

61. Upon information and belief, Defendants had complete control over and actively reviewed and monitored the content posted on the Website.

62. Upon information and belief, Defendants have the legal right and ability to control and limit the infringing activities on the Website and exercised and/or had the right and ability to exercise such right.

63. Upon information and belief, Defendants monitor the content on the Website.

64. Upon information and belief, Defendants have received a financial benefit directly attributable to the Infringements.

65. Upon information and belief, the Infringements increased traffic to the Website and, in turn, caused Defendants to realize an increase in their advertising and business revenues.

66. Upon information and belief, a large number of people have viewed the unlawful copies of the Photographs on the Website.

67. Upon information and belief, Defendants at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

68. Defendants' use of the Photographs harmed the actual market for the Photographs.

69. Defendants' use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

70. On May 31, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints contained herein concerning Defendants' infringement of Plaintiff's rights-protected work.

71. Thereafter, on July 31, 2024, Plaintiff, via counsel, served a follow up letter seeking to address said complaints directly with Defendants in attempt to avoid litigation.

72. Despite Plaintiff's efforts and willingness to address Defendants' infringing activity, Defendants failed to respond to either letter. The Infringements have since been removed



SLG SANDERS · LAW GROUP ·

from the Website, confirming that Defendants had the practical ability to stop the infringing display at all times. Plaintiff was therefore forced to seek judicial intervention for Defendants' infringing activity.

73. As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT

***(Direct Copyright Infringement, 17 U.S.C. §501 et seq., Against All Defendants)***

74. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

75. The Photographs are original, creative works in which Plaintiff owns a valid copyright.

76. The Photographs are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

77. Plaintiff has not granted Defendants a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendants.

78. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendants improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

79. Defendants' display of the Photographs constitutes willful copyright infringement.

80. Upon information and belief, Defendants willfully infringed upon Plaintiff's copyrighted Photographs in violation of Title 17 of the U.S. Code, in that Defendants used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photographs without Plaintiff's consent or authority.

81. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative,

at Plaintiff's election, an award for statutory damages against Defendants, jointly and severally, for each work infringed pursuant to 17 U.S.C. § 504(c).

82. As a result of Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendants.

83. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**SECOND COUNT**
***(Vicarious Copyright Infringement, Against All Defendants)***

84. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

85. This Count is pleaded in addition and in the alternative to Count I, to the extent any Defendant contends that the Infringements were created by someone other than that Defendant, including the Author, any other writer, editor, or contributor to the Website, or the other Defendant.

86. Each of the Photographs was directly infringed when it was publicly displayed on the Website without Plaintiff's authorization by the persons who selected and placed the Photographs in the article, including the Author (the "Direct Infringers").

87. Arena Media had the right and ability to supervise the infringing activity of the Direct Infringers. Arena Media owns the Website and the SURFER brand, and it controlled whether, where, and how the article and the Photographs appeared on the Website.

88. Arena Group had the right and ability to supervise the infringing activity of the Direct Infringers and of Arena Media. Among other things, Arena Group operates the Website within its Adventure Sports Network division, hires and supervises the Website's editorial leadership, operates the technology platform through which the Website's content is published, sets the terms of use governing the Website, and administers the process by which notices of claimed infringement concerning the Website are received and acted upon.



SLG SANDERS · LAW GROUP ·

89. Arena Group's connection to the infringing activity is substantial and continuing, and is not merely that of a parent corporation to a subsidiary. Arena Group itself directs, staffs, and monetizes the editorial operation that published the Infringements.

90. Each Defendant declined to exercise its right and ability to stop or limit the Infringements, despite having both the legal right and the practical ability to do so at all times.

91. Each Defendant had a direct financial interest in the Infringements. The Website is monetized through advertising served to its visitors, and the Photographs, presented to readers as exclusive "Leaked Footage" of a major movie star on set, were the draw of the article, increasing traffic to the Website and, in turn, the advertising revenue that Arena Group reports on a consolidated basis.

92. Defendants are vicariously liable for the Infringements whether or not the Direct Infringers were Defendants' employees, because vicarious liability arises from Defendants' right and ability to supervise the infringing activity combined with their direct financial interest in it, and does not depend on any employment relationship.

93. Upon information and belief, Defendants' vicarious infringement of Plaintiff's copyrights in the Photographs was willful.

94. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the Infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendants, jointly and severally, for each work infringed pursuant to 17 U.S.C. § 504(c).

95. As a result of Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendants.

96. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.



SLG SANDERS · LAW GROUP ·

## JURY DEMAND

97. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Defendants have infringed on Plaintiff's rights to the Photographs in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendants infringed Plaintiff's copyright interest in and to the Photographs by displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendants, jointly and severally, for each work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendants pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

SLG SANDERS LAW GROUP

DATED: November 10, 2026

**SANDERS LAW GROUP**

By: *___/s/ Craig Sanders__________*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129687

*Attorneys for Plaintiff*